# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CATHERINE E. DREIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:15-cv-00423 |
| v. ) | Judge Sharp / Knowles |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's "Notice of Motion and Motion for Judgment on the Administrative Record." Docket No. 21. Plaintiff has filed a Supporting Memorandum of Law. Docket No. 22. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 23. Plaintiff has filed a Reply. Docket No. 24.

For the reasons stated below, the undersigned recommends that this action be REMANDED.

# I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on August 31, 2011, with a protective filing date of August 24, 2011, alleging that she had been disabled since October 18, 2010, due to "Sarc, mg, sleep apnea, AUTO IMMUNE [*sic*], hypertension, aaa, bav, depression." *See, e.g.,* Docket No. 11, Attachment ("TR"), pp. 64, 114, 132. Plaintiff's application was denied both initially (TR 64) and upon reconsideration (TR 65). Plaintiff subsequently requested (TR 77-78) and received (TR 38-63) a hearing. Plaintiff's hearing was conducted on July 15, 2013, by Administrative Law Judge ("ALJ") Brian Dougherty. TR 38. Plaintiff and vocational expert ("VE"), Chelsea Brown, appeared and testified. *Id.*

On November 6, 2013, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 19-21. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since October 18, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: obesity, degenerative disc disease, Lyme disease, hip bursitis, and carpal tunnel syndrome (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual

|   | functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to frequency [*sic*] postural activities with occasional climbing of stairs and ramps and no climbing of ladders, ropes, or scaffolds; must avoid concentrated exposure to pulmonary irritants like fumes; cannot have exposure to hazards; and can frequency [*sic*] handle and finger. |
|---|---|
| 6. | The claimant is capable of performing past relevant work as a warehouse parts manager, grocery cashier II, and day care/nursery school attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). |
| 7. | The claimant has not been under a disability, as defined in the Social Security Act, from October 18, 2010, through the date of this decision (20 CFR 404.1520(f)). |

TR 24-30.

On November 12, 2013, Plaintiff timely filed a request for review of the hearing decision. TR 18. On March 6, 2015, the Appeals Council issued a letter declining to review the case (TR 1-4), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the

"listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) failing to adequately analyze and weigh the medical opinions of Plaintiff's treating physician, Dr. Richard Martin, and the State agency medical consultants; (2) improperly discounting Plaintiff's credibility; (3) assigning a residual functional capacity ("RFC") that is unsupported by substantial evidence; and (4) improperly relying on an incomplete hypothetical question posed to the VE. Docket No. 22. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be vacated and remanded for further proceedings. *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery*

*v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. The ALJ's Analysis of the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred by improperly analyzing and weighing the opinions of Dr. Richard Martin, Plaintiff's treating physician, and the State agency medical consultants. Docket No. 22, p. 12. Plaintiff maintains that the ALJ failed to weigh Dr. Martin's opinion under the treating physician guidelines. *Id*. at 13. Plaintiff notes the ALJ's failure to use Dr. Martin's name while discussing his opinion, instead referring to him as a Frist Center physician. *Id*. Plaintiff states that Dr. Martin, who has been Plaintiff's primary care physician for over four years, drafted a letter outlining Plaintiff's medical issues and limitations. *Id*. at 14. Plaintiff asserts that the ALJ improperly emphasized Dr. Martin's conclusion that Plaintiff was disabled without addressing Dr. Martin's functional limitations or mentioning that Dr. Martin is Plaintiff's primary care physician. *Id*. at 15. As such, Plaintiff argues, the ALJ has understated Dr. Martin's treating relationship with Plaintiff. *Id*. Plaintiff summarizes Dr. Martin's treatment of Plaintiff and argues that Dr. Martin's treatment notes support his opined limitations provided in his letter. *Id*. at 16. Additionally, Plaintiff asserts that it was error for the ALJ to heavily weigh the State agency medical consultants' opinions, as the State agency medical consultants did not know about Plaintiff's formal diagnosis of Lyme disease and did not have "significant access to the record." *Id.* at 17-18. Plaintiff concludes that the ALJ's treatment of the opinions of Dr.

Martin and the State agency medical consultants warrants remand. *Id*.

Defendant responds that the ALJ properly considered Dr. Martin's opinion and accorded it little weight because Dr. Martin's conclusion that Plaintiff is "fully disabled" was not consistent with Plaintiff's improvement following treatment. Docket No. 23, p. 4-5. Defendant asserts that the ALJ's failure to specifically reference Dr. Martin by name is of no consequence, as the ALJ "clearly considered Dr. Martin's letter and found that it was not supported by the record as a whole." *Id*. at 4. Defendant further contends that "Dr. Martin's 'functional assessment' was vague and provided little more than his conclusory statement that Plaintiff was 'fully disabled.'" *Id*. at 4-5, *citing* TR 465. Defendant argues that Dr. Martin's letter fails to "provide any specific functional limitations for the ALJ to evaluate or incorporate in the RFC." *Id*. at 5. Defendant notes that the conclusion that Plaintiff is disabled is a determination reserved for the Commissioner; thus, Dr. Martin's conclusion regarding Plaintiff's disability status was improper. *Id*. Defendant further argues that the ALJ discounted Dr. Martin's letter because it was inconsistent with Plaintiff's treatment records, including records from Drs. Martin, Jefferson, and Schneider. *Id*. at 5-6.

Defendant contends that the ALJ properly accorded significant weight to the State agency physicians' opinions because their assessment for a range of light exertional activity was consistent with Plaintiff's pain improvement with treatment, but also incorporates Plaintiff's continued reports of some pain. *Id*. at 7. Defendant argues that the fact that the State agency medical consultants were unaware of Plaintiff's Lyme disease diagnosis is of no consequence, as Plaintiff had the same physical symptoms and limitations after the diagnosis as she had before the diagnosis. *Id*. Defendant further argues that "the State agency physicians' opinions are

9

supported by the record . . . ." *Id.*, citations omitted.

Plaintiff replies that the ALJ's treatment of Dr. Martin's opinion was improper. Docket No. 24. Plaintiff contends that the ALJ's omission of Dr. Martin's name, while a minor point, indicates the ALJ's cursory treatment of Dr. Martin's opinion. *Id.* at 1. Plaintiff further contends that the ALJ's consideration of Dr. Martin's opinion does not meet the standards of the evaluation required of a treating physician's opinion under the Regulations. *Id.* at 1, *referencing* 20 CFR § 404.1527(c). Plaintiff argues that Defendant's assertion that there are not specific functional limitations within Dr. Martin's letter is without merit, and that the functional limitations provided by Dr. Martin are "directly at odds with the ALJ's RFC finding." *Id.* at 2. Plaintiff reiterates that the ALJ failed to address Dr. Martin's functional limitations or resolve the conflict between those limitations and the ALJ's RFC finding. *Id.* Plaintiff asserts that, while the ALJ discounted Dr. Martin's opinion on the basis of Plaintiff's medical improvement, Plaintiff has shown that "since February 2012 through the end of the medical records provided in the file, Plaintiff's condition remained disabling." *Id.* at 3, *referencing* Docket No. 22, p. 6-9. Plaintiff further argues that the ALJ's adoption of the State agency medical consultants' opinions, rendered in 2012 and based entirely on Plaintiff's obesity, is not supported by substantial evidence. *Id.* Plaintiff contends that the two treating physicians who provided their opinions regarding Plaintiff in 2013 "indicated that Lyme disease was a significant cause of [Plaintiff's] symptoms." *Id.* at 3-4. Plaintiff insists that the State agency physicians have no basis for their opinions, since they never examined Plaintiff, do not know her formal diagnosis of Lyme disease, and had limited access to the record. *Id.* at 4.

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
> . . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[2] *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). If the ALJ rejects the opinion of a treating source, however, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

The ALJ in the instant action discussed the treatment records from Dr. Richard Martin as

---

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

follows:

> The claimant submitted records from the Frist Clinic showing that
> she was recommended for bariatric surgery in July 2008. At the
> time, she was 208 pounds with a BMI of 36. She is five foot three
> inches tall. (Ex. 4F at 27). She did not have the surgery, although
> this is not explained in the associated records. The records from
> the Frist Clinic show that she was already experiencing headaches
> when she started reporting fatigue in October 2009. She was up to
> 233 pounds. (Ex. 4F at 17).

TR 26, *citing* TR 287, 297.

The ALJ further discussed the treatment records of Dr. Martin by noting, "On November 9, 2011, the claimant visited the Frist Clinic complaining of diffuse joint pain and fatigue. (Ex. 6F at 1-2)." TR 27, *citing* TR 343–44.

The ALJ's discussion and analysis of Dr. Martin's opinion is as follows:

> Similarly, a letter from a Frist Clinic physician claiming the
> claimant is "fully disabled" merits little weight because the
> claimant's treatment records show improvement with treatment
> (Ex. 24F). Further, it is on a matter reserved for the
> Commissioner, and the medical evidence does not support finding
> that the claimant is incapable of any exertional activity. Even the
> claimant does not allege this level of limitation.

TR 29, *citing* TR 465-66.

The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled because the definition of disability requires consideration of both medical and vocational factors. *See, e.g., King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988). While the ALJ appropriately affords little weight to Dr. Martin's conclusion that Plaintiff is "fully disabled," the ALJ fails to discuss many of the conditions and limitations opined in Dr. Martin's letter. Specifically, the ALJ does not discuss

13

weakness in Plaintiff's voice, shortness of breath, generalized muscle weakness (although the ALJ does refer to "muscle symptoms," *see* TR 29), blurred vision, alteration in consciousness/syncope, hypertension, bicuspid aortic valve, obstructive sleep apnea (including Plaintiff's current use of a CPAP machine), Plaintiff's history of sinus surgery, or tenosynovitis (although the ALJ was aware of Plaintiff's carpal tunnel syndrome, *see, e.g.,* TR 26). *See* TR 22-29. The ALJ's opinion also does not address Dr. Martin's opined limitations, including that:

> Due to the severity [of Plaintiff's symptoms], [Plaintiff] is unable to stand or walk for long periods of time. She cannot concentrate even to perform a desk job. There is no way [Plaintiff] can lift, bend, or stoop significantly due to her musculoskeletal disabilities.

TR 465.

At the hearing in this matter, the ALJ acknowledged that the record did not contain an opinion from Plaintiff's treating physician, and that such an opinion would be helpful. *See* TR 59-62. It appears that Dr. Martin's opinion (TR 465-66), as well as a short letter and records submitted by Dr. John Schneider (TR 461-64), were submitted by Plaintiff after the hearing in response to the ALJ's acknowledgement. It is unclear, however, from the ALJ's opinion, whether the ALJ evaluated all of the conditions and limitations opined by Dr. Martin.

The Sixth Circuit has held that remand is required despite the existence of substantial evidence to support the ALJ's decision where the ALJ might have reached a different decision had he not misconstrued certain evidence or overlooked other evidence. *Uforma/Shelby Business Forms v. N.L.R.B.*, 111 F.3d 1284, 1292-1293 (6th Cir. 1997). Because the undersigned cannot determine with certainty that the ALJ was aware of or considered all of Dr. Martin's opined limitations, or how consideration of those limitations might have changed the ALJ's assessment

of the opinions of the State agency physicians, the undersigned recommends that this action be REMANDED for further consideration of the medical opinion evidence in light of Dr. Martin's letter.[3]

### IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that this action be REMANDED for further consideration of the medical evidence in light of the limitations opined by Dr. Martin.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

```
_____
       E. CLIFTON KNOWLES
       United States Magistrate Judge
```

---

[3] Because the undersigned recommends that this action be remanded, the undersigned will not analyze Plaintiff's remaining statements of error.